Hawkins, J.,
delivered the opinion of the Court.
At the March Term, 1861, of the Circuit Court for Smith County, this cause was submitted to a jury, who rendered a verdict in favor of the defendants, upon which a judgment was pronounced. The plaintiffs moved for a new trial, which was refused, and they have appealed to this Court.
The declaration contains three counts. The first charges the defendants, as common carriers, for failing to deliver, according to promise, a lot of wheat. The second charges, that, in consequence of the carelessness, negligence and fraudulent conduct of the defend *476 ants, as common carriers, the wheat was lost. The third, and last count, charges the defendants with a conversion of the wheat, and sacks containing it.
It appears from the record, that one H. C. Sey-more was the agent of the plaintiffs during the year 1857, for the purchasing of wheat and other grains, for the mill and distillery of the plaintiffs in Nashville, and, as such, had authority to appoint and employ sub-agents for that purpose; and in the exercise of the power vested in him, did appoint one Corden as such sub-agent, and authorized him to purchase, pay for, and ship to Nashville, for the use of plaintiffs, wheat and other grains.
Corden proceeded, under authority and in pursuance of instructions from Seymore, to purchase a lot of wheat, and contracted with defendants for the shipment and transportation of the same from Trousdale’s Ferry, and other points on the Caney Fork River, to Sanders’ Ferry, on the Cumberland Eiver. The boat and most of the cargo sunk in three feet of water, at the mouth of Caney Fork, about three-fourths of a mile above Sanders’ Ferry. The defendants took the wheat out of the water and sold, or otherwise disposed of it, to their own use.
Upon the trial of the cause, the plaintiffs insisted the defendants had failed* to deliver the wheat at Sanders’ Ferry, according to the terms of the contract, and that the ' sinking of the boat and cargo was owing to the carelessness, negligence and fraudulent conduct of the defendants. The defendants insisted the terms of the original contract, as to the *477 place of the delivery of the wheat, had been changed, and that in pursuance of the terms of a subsequent contract, it was delivered at the mouth of Caney Fork, and had, in fact, been received' by Corden; that the sinking of the boat was owing to the unskillful manner of unloading the boat after Corden had received the wheat, and that, after the sinking of the boat and cargo they purchased the wheat from Corden, in consideration of a small sum due them for transportation; and upon all these points both parties offered proof. But it is believed all the facts necessary to raise the questions presented for our consideration have been recited.
It does not appear that Corden, at any time, communicated to the defendants the fact of his agency, or that defendants had, in any manner, acquired any knowledge of the fact that he was only an agent, and not the principal and real owner of the wheat.
The Circuit Judge charged the jury: “If Corden dealt with defendants for himself, or under circumstances which would satisfy a reasonable man that he was dealing for himself, and not for plaintiffs, then, before plaintiffs could maintain any action against defendants, the defendants must have notice of plaintiffs interest in the transaction.”
The Judge further instructed the jury, that “this principle applies to all the counts. in the declaration.” This, it is insisted, is erroneous; and we do not believe the rule, as laid down by His Honor, the Circuit Judge,' can be sustained, either upon principle, or by authority. In cases arising upon contracts, the principal is bound *478 by the acts and contracts of his agent, done with his consent, or by his authority, or ratified and adopted by him; and in such cases, there arises a reciprocal obligation to the principal, on the part of the third person, with' whom such contracts are made, and for whose benefit, and with whose consent, such acts -are done; and in all such cases, the general doctrine is, that the principal, as the ultimate party in interest, is entitled, as against such third person, to all the advantages and benefits of such acts and contracts of his agents. And it will make no difference, in such cases, that the agent' is a factor, acting under a del crede commission; nor that the principal, at the time of entering into the contract, is unknown, or unsuspected; nor that the third person has dealt with the agent, supposing him to be the sole principal. The only effect of the last consideration is, that the principal will not be permitted, while insisting upon the contract, to intercept the right of such third person in regard to the agent, but he must take the contract, subject to all the rights of such third person, in the same way as if the agent was the sole principal; and subject to these rights, the principal may generally sue upon such contract, in the same manner .as if he had personally made it. Neither can it make any difference, that the contract be of that character that the agent may maintain a suit upon it in his own name.
■ In cases where a' third person deals with an agent, supposing him to be the principal, and without any knowledge that the property involved in the transaction belongs to another, such third person may acquire rights which will be protected; and to this end, it can make *479 no difference whether the action he in the name of the principal or agent. The right to sue upon the contract’'*' entered into by the agent, within the scope of his power, and to the enjoyment of all its benefits and advantages by operation of law, flows to the principal, though he may be unknown; and the fact that the third person ■dealing with the agent, believing him to be the principal, cannot defeat the rights of the principal. Neither will the fact that the name of the principal was conceded, while such third person was induced to contract with the agent, believing him to be the principal, be permitted to defeat the rights of such third person, under or growing out of such contract, even though the action be brought in the name of the principal; and in all such cases, it may be said, the principal “steps into / the shoes of the agent.”
When a party has entered into a contract, under the assumed character of an agent, either concealing or falsely representing the name of the principal, when, in fact, he was himself the principal, and party for whose benefit he had, under the assumed character of agent, made the contract, it has been holden he cannot maintain an action upon such contract, as principal, without having first given to the other party notice of his real character, upon the ground that the plaintiff had misled the defendant, by assuming a situation which did not belong to him, and, therefore, was bound to undeceive the defendant, before bring-/ ing his action.
But we know of no other class of cases, in which the principal may not maintain his action upon the *480 contract, entered into by bis agent in bis own name, as well without as with, having given notice to the .defendant, of his interest.
It will be observed, that the principles to which we have referred, are applicable to actions purely ex contractu.
The third count in the declaration alleges the tor-tious conversion of the property of the plaintiffs by the defendants. The proof is clear, that the defendants had sold, and otherwise disposed of, the wheat to their own use; consequently, the rule that, in some cases, notice or demand is necessary to make out a conversion, does not apply to this case. And we áre wholly at a loss to conceive of any principle, upon which a defendant can be permitted to insist, that, although I may have been guilty of the illegal and wrongful seizure of the property of A, but at the time I did so, I had good reason to believe it belonged to A, therefore, A, the rightful owner, cannot maintain an action against me, to recover the value of his property, until he first shall have given me notice of his interest in the property. And the fact, that the defendant may have found the property in the hands of the agent, and may, prior to the conversion, have had some dealings with him concerning it, without the knowledge of his agency, or that the property belonged to the plaintiff, cannot, as we believe, impose upon the true owner, the necessity of giving notice to the defendant, of his interest in the property, before bringing his suit.
To hold the law to be as charged, would, as we *481 believe, be productive of much mischief, and defeat the ends of justice.
The Circuit Judge charged the jury further: “That if Corden was the agent of plaintiffs, to purchase wheat and ship it to them, and it was sunk in the river, in the opinion of the Court, such agency would confer the power to take care of it, or sell and dispose of it, so as, in his opinion, best to promote the interest of his principals; and if he did so dispose of it, it was binding upon the principals.”
This, it is also insisted, is erroneous, and, we confess, the question is not entirely free from difficulty. Almost all the rules bearing upon this question are subject to exceptions. The difficulty is not in determining what are the general rules, but whether this case falls within the exceptions. Corden was a special agent, having express power to buy wheat and other grain, pay for it, and ship it to Nashville, for the use of the plaintiff, but to do nothing further; and unless the contrary appears to have 'been the intention of the parties, his agency will be construed to include all the necessary and usual means of executing it with effect.
It is not insisted that the power to sell, is incidental to the power to buy and ship, Or .that the power to sell is necessary to enable the agent to execute with effect the express powers conferred; nor is it insisted that, under ordinary circumstances, the agent, Corden had any power to sell the wheat; but it is insisted, that an emergency had arisen, the wheat was in the water, the danger of its total destruction and loss was *482 imminent, and that Oorden derived a power to sell from an' impending necessity.
It is true, that, under extraordinary circumstances, an agent may he justified in assuming extraordinary powers; and his acts, fairly done, under such circumstances, will be binding upon his principal; but it does not follow as a corollary, that, under extraordinary circumstances, an agent may assume any or all extraordinary powers, and by his acts bind his principals; hence, it is important to observe the character of powers, which may, under such circumstances, be assumed, and the incidental relationship which they bear to the powers actually conferred.
Thus, it is said, a factor will be justified in deviating from his orders, directing him to sell at a stipulated price, if the goods are of a perishable nature, and the sale is indispensable to prevent a total or further loss. Here, the extraordinary power assumed by the agent, is not to sell — that had been expressly conferred — but to deviate from his orders, in accepting a price differing from the one stipulated by his principals. “If goods are perishable and perishing,” or, “if they are accidentally injured, and must be sold to prevent further loss,” the agent may deviate from his instructions, as to the time or price at which they are to be sold. Here, however, another difficulty springs up — that of determining whether these latter cases apply to questions as between principal and agent, in determining the duties and obligations of the agent to the principal, or as between the principal and third persons, in determining the binding validity of the acts of the agents.
*483 It is said the master of a ship, in eases of necessity, acquires a superior authority over the ship, and cargo, which do not belong to his general agency, and circumstances may arise, under the necessities of which he would he authorized to sell both ship, and cargo, but it seems to us, the better opinion is, this-is an incidental power pertaining to his office as master of the ship, conferred upon him by usage,, which may be exercised in cases of necessity; and in no other instances, as we believe, may an agent assume-a power as distinct from, and independent of the power conferred, as the power to sell is .from the power. to> buy and ship, and by his acts in the exercise of such-assumed power, bind his principal.
We think Corden had the power, under the circumstances, to take care of the wheat, and to employ hands or such other means, as may have been necessary to have it taken out of the water and preserved, for the purpose of preventing a total injury, or total loss, and to this extent his principal would have been bound by his acts. But we are of opinion, he did not have the power to sell the wheat, because of any thing apparent in the record.
It may be true, that an agent may acquire such an interest in the property as will authorize him to sell it, but no such interest is shown to have existed in this instance. Hence, the principle does not apply. Heither was the charge given with reference to any such supposed interest, but was given with reference alone to the extraordinary powers which it was sup- *484 iposed the agent might rightfully exercise, under the supposed emergency.
But another question is presented in this record, for our consideration. The defendant caused to be taken -and- placed on file, the deposition of one M. L. Grasty, to the reading of which, the plaintiffs excepted. Because the deposition of the same witness had been .previously taken by the defendants, which had been • excepted to and excluded, and that this deposition had ¡been taken without the filing of any other additional .interrogatories, or giving any notice of such having been filed subsequently to the rejection of .the original deposition, and because no notice had been given to the plaintiffs, of the time and place of taking the same.
The record is singularly defective, and its inspection ¡might serve as a useful commentary upon the prevailing carelessness, which has every where crept into our .practice, or the imperfect, confused, and bungling manner in which records are frequently transcribed. The ■caption and the deposition on its - face, shows it was ¡taken upon interrogatories — but from whence they came, what they are, by whom, when, or where they were filed, does not appear. They do not accompany the deposition, nor are they transcribed into the record, nor ¡does it appear, except from the exception itself, that • ¡any interrogatories have ever been filed in the cause, or that any notice of such, has ever been given. The caption recites that it was taken in Pope County, in the State of Illinois, on the 14th day. of June, 1859, and *485 the certificate of the Justice of the Peace, appended to the deposition, is dated on the 24th day of October, 1859 — a period of more than four months after it purports to have been taken; and although the reading of the deposition was excepted to, because it had not been filed in time, the record fails-to show when it was filed, or when the exceptions were -filed; but it does show, that on the 25th of March, 1861, the Clerk sustained the exceptions first above mentioned, from whose action the defendants appealed to the Court, who overruled the exceptions, and that the deposition was read.
If, from what has been stated, it can be said to appear the deposition has, in fact, been taken upon interrogatories, filed in the cause, and under the circumstances as stated in the exceptions, we think that thJ filing of interrogatories, and giving notice thereof, under sec. 3855 of the Code, is in lieu of the notice of the time and place of taking the deposition required by other sections of the Code; and when the deposition of the witness has been once taken upon such interrogatories, all the efficacy of such interrogatories and notice, in giving the party the right to take the deposition, is exhausted; and the party has no right to re-take the deposition, for any cause, without re-filing the original, or filing additional interrogatories, and giving the opposite party the notice, as required by the section of the Code, before referred to, and, therefore, the exception should have been sustained. And if the deposition was not taken upon interrogatories, and in the manner as stated in the exception, then plaintiff's exceptions, for want of notice, *486 was well taken, and should have been sustained. We think the Court erred in overruling the exceptions, and in permitting the depositions to be read.
The judgment of the Circuit Court will be reversed, and the cause remanded for a new trial.