FILED
11/03/2022
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 1, 2022

**TROY LOVE v. ANDRE MCDOWELL ET AL.**

**Appeal from the Chancery Court for Union County**
No. 6899     Elizabeth C. Asbury, Chancellor
_____

**No. E2022-00230-COA-R3-CV**
_____

This appeal involves a challenge to a chancery court's granting of a motion to enforce a settlement agreement related to litigation over the partition of family-owned property. The appellant is incarcerated, which caused complications for all parties in efficiently resolving their dispute. The chancellor concluded the appellant was bound by the settlement reached by his agent, who was acting with both actual and apparent authority. On appeal, the appellant contends the chancellor erred in finding his agent had actual and apparent authority to agree to a settlement on his behalf. We conclude that the appellant has failed to demonstrate that the chancellor erred in finding the appellant conferred actual authority upon his agent; accordingly, we affirm the chancery court's granting of the appellees' motion to enforce the parties' settlement agreement.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

JEFFREY USMAN, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and ARNOLD B. GOLDIN, J., joined.

Troy Love, Mountain City, Tennessee, Pro Se.

Christopher W. Sherman, Chattanooga, Tennessee, for the appellees, Andre Lavon McDowell and Denise Joanna McDowell.

**OPINION**

I.

The circumstances giving rise to this appeal are deeply immersed in the challenges of resolving an ordinary property litigation dispute when one of the parties is incarcerated. The underlying litigation began with a suit to partition a piece of real property located in Sharps Chapel, Tennessee ("the Property"). The Property was owned by four individuals: Troy Love, Judy Love (Mr. Love's wife), Denise McDowell (Ms. Love's daughter), and

1

Andre McDowell (Ms. McDowell's husband). The McDowells lived at the Property and made improvements while residing there. In 2012, Ms. Love died intestate; she was survived by her husband and two children, Ms. McDowell and Wendy Nicola.

Mr. Love, who has been incarcerated since 2014 and who anticipates remaining incarcerated during the pendency of this appeal, brought suit in 2017 seeking partition and sale of the Property in the Union County Chancery Court. He named the McDowells as defendants. In response, the McDowells filed a motion to dismiss for failure to join a necessary party, Ms. Nicola, arguing she had an interest in the Property as an heir of Ms. Love. A hearing on the motion to dismiss was set for December 17, 2018. Mr. Love, however, did not file a response in opposition to the motion until January 4, 2019. In his response, Mr. Love noted that he had not received the motion before the date of the hearing due to delays in the prison mailing system. He also argued that Ms. Nicola was not a necessary party to the partition suit. The chancery court granted the motion to dismiss because of Mr. Love's failure to timely file a response. Mr. Love appealed the dismissal, and this court vacated the chancery court's decision and remanded the case for further proceedings to determine whether the motion should be granted in accordance with Rules 12.02(7) and 19 of the Tennessee Rule of Civil Procedure.

Upon remand, the parties pursued settlement discussions. Communication difficulties stemming from Mr. Love's incarceration, however, arose for the parties in trying to resolve their dispute. The parties disagree as to the extent of these difficulties. Mr. Love insists that he could have communicated with counsel for the McDowells by phone; counsel for the McDowells insists phone communication was unworkable because of limitations within the prison system. Having heard testimony on this point, the chancery court found that the McDowells "and their counsel were unable to directly contact [Mr. Love] by telephone."

Whatever the extent of the communication problems, Mr. Love asked his brother-in-law, Mr. Huey Hopkins, to negotiate with the McDowells' counsel on his behalf. On February 1, 2021, Mr. Love, through Mr. Hopkins, extended a settlement offer of $50,000 to convey Mr. Love's interest in the Property and resolve all disputes between the parties. The McDowells rejected the $50,000 offer and made a counter-offer of $25,000. Mr. Love rejected the McDowells' counter-offer of $25,000. On May 17, 2021, Mr. Love, again through Mr. Hopkins, extended a second settlement offer, proposing to convey his interest in the property for $50,000 and proposing a 50/50 split of the costs of preparing the deed, the filing fee, the transfer taxes associated with the transfer of Mr. Love's share of the property, and the court costs. The McDowells accepted Mr. Love's offer on May 20, 2021, via a phone call with Mr. Hopkins. Mr. Hopkins informed Mr. Love between May 20 and June 1, 2021.

After May 20, 2021, Mr. Hopkins researched the value of the Property. He discussed this research on valuation with Mr. Love, who concluded that $50,000 did not adequately compensate for his interest in the Property. Mr. Love told Mr. Hopkins that he was increasing the bottom line for his settlement demand to $70,000 and would not split

costs. This offer was communicated via Mr. Hopkins to the McDowells' counsel in June of 2021. In July of 2021, Mr. Love, again via Mr. Hopkins, communicated an amended settlement proposal in which he would agree to split costs if the $70,000 offer was accepted by the McDowells.

In addition to having communicated a new offer in June of 2021, Mr. Love also executed that same month a written power of attorney document naming Mr. Hopkins as his attorney-in-fact. Mr. Hopkins received the executed document by mail on June 22, 2021. Mr. Hopkins informed the McDowells' counsel of receiving the power of attorney document in July of 2021, and he sent a copy to the McDowells' counsel in September of 2021.

Mr. Hopkins continued to have conversations with counsel for the McDowells throughout the summer and fall of 2021 on behalf of Mr. Love. In response, the McDowells insisted the parties had already entered into a settlement agreement. In accordance with that understanding, the McDowells filed a motion before the Union County Chancery Court to enforce the settlement in October of 2021.

In responding, Mr. Love initially focused on denying that any final agreement had been reached between the McDowells and Mr. Hopkins. Mr. Love asserted that "Mr. Hopkins has represented to [Mr. Love] that at no time while acting as [Mr. Love's] agent, did he accept any offer to settle the case for a sum of $50,000.00." Mr. Love insisted that Mr. Hopkins had "not agreed to a final sum" and was instead still attempting to negotiate with counsel for the McDowells.

In December of 2021, the Union County Chancery Court conducted a hearing upon the McDowells' motion to enforce the parties' purported settlement agreement. The evidence presented consisted of testimony from Christopher Sherman (counsel for the McDowells), Mr. Love, and Mr. Hopkins. At the hearing, Mr. Love "testified that he appointed Mr. Huey Hopkins, his brother-in-law to serve as his agent," but emphasized that he had not conferred authority upon Mr. Hopkins to accept a settlement offer from the McDowells.

After hearing the testimony, the chancery court granted the McDowells' motion to enforce the settlement. The chancery court did so on three grounds. One, the chancellor concluded that Mr. Love had appointed Mr. Hopkins as his agent with actual authority to negotiate the settlement that was reached in this case. Second, the chancellor concluded that, even accepting for purposes of argument that Mr. Love had not empowered Mr. Hopkins to accept an offer of settlement from the McDowells, Mr. Love's argument still missed the mark. The argument missed the mark because it was the McDowells who accepted Mr. Love's offer conveyed via Mr. Hopkins to their counsel rather than Mr. Hopkins accepting an offer from the McDowells. Third, the chancellor concluded that, in addition to having actual authority, Mr. Hopkins also had apparent authority to act as Mr. Love's agent, and Mr. Love was, accordingly, bound by the settlement reached by Mr. Hopkins on his behalf with the McDowells.

On appeal, Mr. Love argues the chancellor erred. He insists that Mr. Hopkins lacked apparent authority to reach a settlement in this case and asserts that Mr. Hopkins did not have actual authority to reach a settlement until Mr. Love signed the power of attorney in June of 2021, which was after the purported settlement agreement was reached in this case. The McDowells counter that the chancellor properly found Mr. Hopkins was acting with actual and apparent authority. They also argue that Mr. Love's appeal is frivolous under Tennessee Code Annotated section 27-1-122 and request attorney's fees in connection with this appeal.

## II.

Mr. Love is representing himself in this appeal as he did in the Union County Chancery Court. Pro se litigants "are entitled to fair and equal treatment by the courts." *Vandergriff v. ParkRidge E. Hosp.*, 482 S.W.3d 545, 551 (Tenn. Ct. App. 2015). Courts should be mindful that pro se litigants often lack any legal training and many are unfamiliar with the justice system. *State v. Sprunger*, 458 S.W.3d 482, 491 (Tenn. 2015). Accordingly, courts should afford some degree of leeway in considering the briefing from a pro se litigant, *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003), and should consider the substance of the pro se litigant's filing. *Poursaied v. Tennessee Bd. of Nursing*, 643 S.W.3d 157, 165 (Tenn. Ct. App. 2021). Pro se litigants, however, may not "shift the burden of litigating their case to the courts." *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000). Additionally, "[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her." *Sneed v. Bd. of Prof'l Responsibility of Sup. Ct*, 301 S.W.3d 603, 615 (Tenn. 2010). In considering appeals from pro se litigants, the court cannot write the litigants' briefs for them, create arguments, or "dig through the record in an attempt to discover arguments or issues that [they] may have made had they been represented by counsel." *Murray v. Miracle*, 457 S.W.3d 399, 402 (Tenn. Ct. App. 2014). It is imperative that courts remain "mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary." *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003).

With this framework in mind,[1] two arguments emerge from Mr. Love's brief. One, Mr. Love contends that the chancery court erred in concluding that Mr. Hopkins was clothed in apparent authority to act on his behalf when negotiating a settlement with the McDowells. Two, Mr. Love asserts that he did not confer upon Mr. Hopkins actual authority to accept, reject, or offer any settlement to the McDowells.

The overwhelming focus of Mr. Love's appellate brief is upon the first contention, his apparent authority argument, which is grounded upon three core pillars. First, there existed a dramatic difference in legal expertise in the settlement negotiations between the McDowells who were represented by counsel and Messrs. Love and Hopkins, neither of

---

[1] Mr. Love has not raised the statute of frauds as a defense against enforcement of the settlement agreement in his argument on appeal nor does it appear from the record before this court that such a defense was presented to the chancery court.

4

whom are attorneys. Second, Mr. Love insists he could have communicated by phone directly with the McDowells' counsel for these negotiations despite his incarceration, but that counsel for the McDowells failed to utilize this method, electing instead to work through Mr. Hopkins. Third, Mr. Love argues that a finding of apparent authority must be predicated upon his actions as a principal that fostered a reasonable reliance by the McDowells' counsel rather than action by Mr. Hopkins creating such an impression. In accordance with this requirement, Mr. Love asserts that as an incarcerated person he had no direct communication with the McDowells' counsel that would support a finding of reasonable reliance. Mr. Love contends these pillars render unreasonable any reliance by the McDowells upon Mr. Hopkins' apparent authority to act on Mr. Love's behalf, thereby rendering the chancellor's finding of apparent authority errant.

With regard to his lack of actual authority argument, Mr. Love's contention is considerably more thinly developed. Mr. Love denies having conferred upon Mr. Hopkins authority to accept, reject, or offer any settlements until June 2021 when he executed a written document assigning power of attorney to Mr. Hopkins. Prior to that time, Mr. Love insists he had informed Mr. Hopkins that he could not settle the case without his approval. He also objects to the chancellor crediting the testimony of the McDowells' counsel over both his and Mr. Hopkins' testimony.

Even if we were to assume for purposes of argument the correctness of Mr. Love's contention as to apparent authority, his appeal of the chancellor's ruling ultimately would still be unavailing. His contention on appeal is unavailing because Mr. Love has not demonstrated the chancellor erred in her determination that Mr. Love conferred actual authority upon Mr. Hopkins.

III.

The law of agency, which grew up together in the English legal tradition with contract law, has deep common law roots tracing to the Thirteenth Century.[2] Even during the mediaeval period, a contract could be formed through the actions of an agent acting on behalf of a principal.[3]

In accordance with this common law tradition, Tennessee law has long recognized that one person may act for another through an agency relationship.[4] Legal consequences can flow to a principal from the acts of an agent when the agent acts with either actual or apparent authority. *Boren ex rel. Boren v. Weeks*, 251 S.W.3d 426, 432 (Tenn. 2008)

---

[2] Merton Ferson, *Principles of Agency* 7 & n.7 (1954) (quoting William Searle Holdsworth, 8 *History of English Law* 222-23 (1926)).

[3] *Id*.

[4] *See generally*, *e.g.*, *Foster v. Smith*, 42 Tenn. 474, 477-78 (1865) (indicating that "[i]n cases arising upon contracts, the principal is bound by the acts and contracts of his agent, done with his consent, or by his authority, or ratified and adopted by him").

(citations omitted).  "An agent's actual authority to bind the principal consists of the powers which a principal directly confers upon an agent or causes or permits him to believe himself to possess.  It flows from the manifestations of the principal to the agent." *Savage v. City of Memphis*, 464 S.W. 3d 326, 333 (Tenn. Ct. App. 2015) (citations omitted).  Actual authority can be classified into two categories: express and implied authority.  *Id.* at 333.  An agent's actual "express authority is that which the principal gives to him in direct terms, either orally or written." *Rubio v. Precision Aerodynamics, Inc.*, 232 S.W.3d 738, 742-43 (Tenn. Ct. App. 2006).  An agent's actual implied authority "embraces all powers which are necessary to carry into effect the granted power, in order to make effectual the purposes of the agency." *Id.* at 743.

Alternatively, apparent authority "is power held by the agent 'to affect a principal's legal relations with third parties when a third party reasonably believes the agent has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations.'" *Savage*, 464 S.W. 3d at 333 (citations omitted).  The Tennessee Supreme Court has indicated that "[a]pparent agency is essentially agency by estoppel; its creation and existence depend upon such conduct by the apparent principal as will preclude him from denying another's agency." *Boren*, 251 S.W.3d at 432.  To establish apparent authority, the Tennessee Supreme Court has indicated that generally "one must establish (1) the principal actually or negligently acquiesced in another party's exercise of authority; (2) the third person had knowledge of the facts and a good faith belief that the apparent agent possessed such authority; and (3) the third person relied on this apparent authority to his or her detriment." *Id.* at 432-33 (citations omitted).[5]

It is unnecessary for this court to consider whether the chancellor properly found Mr. Hopkins to be acting with apparent authority because the chancellor's finding of actual authority independently supports the chancellor's ruling.  The determination of whether actual authority has been conferred is "a question of fact under the circumstances of the particular case; and whether an agency has been created is to be determined by the relation of the parties as they in fact exist under their agreement or acts." *White v. Revco Discount Drug Centers, Inc.*, 33 S.W.3d 713, 723 (Tenn. 2000) (citations omitted).  In the present case, as noted above, the chancellor found that Mr. Love "appointed Mr. Huey Hopkins as his agent for the purposes of negotiating a settlement of the issues in dispute in the present litigation and Plaintiff provided Mr. Hopkins with actual authority to negotiate such a settlement."  In addition to analyzing the apparent authority of Mr. Hopkins, the chancellor also concluded that Mr. Hopkins was Mr. Love's "actual agent."  With regard to Mr. Love's assertion that he did not authorize Mr. Hopkins to accept a settlement offer from the McDowells, as noted above, the chancellor concluded that his argument missed the mark as it was Mr. Love's settlement offer communicated via Mr. Hopkins that the McDowells accepted.

---

[5] The Restatement (Third) of Agency § 2.03 comment e (2006) asserts distinctions exist between estoppel and apparent authority that impact understandings of reliance in determining whether there is apparent authority.

6

The chancellor heard testimony regarding the actual principal-agent relationship of Mr. Love and Mr. Hopkins and made factual findings that Mr. Love had conferred actual authority on Mr. Hopkins to settle this matter. Mr. Love insists that the chancellor erred in reaching this conclusion, citing portions of the chancellor's order granting the McDowells' motion to enforce the parties' settlement in which the chancellor references the litigation position taken by Mr. Love.

The problem for Mr. Love is that the chancellor, after hearing his position and testimony in support thereof as well as contrasting evidence, reached a contrary understanding of the facts from the version of events advanced by Mr. Love. While Mr. Love contends the chancellor's conclusion was errant, based upon the record before us we simply cannot concur in his assessment.

It does not appear that a transcript was made of the hearing that formed the basis for the chancellor's factual conclusions. Instead of a transcript, Mr. Love sought to follow the procedures set forth in Tennessee Rule of Appellate Procedure 24 for providing, as an alternative, a statement of the evidence. He submitted a proposed statement of the evidence. The McDowells raised objections to his proposed statement of the evidence. The chancellor considered the proposed statement and the objections thereto. The chancellor ultimately determined that her detailed order in the case provided an accurate rendering of the evidence presented and would serve as the Rule 24 statement of the evidence. The record does not reflect that Mr. Love raised any objections nor did he seek to further supplement the record.

Pursuant to Tennessee Rule of Appellate Procedure 13(d), in reviewing factual findings made by trial courts in civil actions, those determinations are "accompanied by a presumption of correctness of the finding, unless the preponderance of the evidence is otherwise." The combination of a thinly supported argument and the practical limitations of review of factual findings in the absence of a transcript combine in this case to fail to overcome these presumptions. Mr. Love asserts the trial court got the facts wrong in finding that Mr. Hopkins was his actual agent and that he conferred authority to either make or accept an offer of settlement. He denies that he conferred such authority upon Mr. Hopkins at the time the purported settlement was reached. The chancellor, after hearing the evidence, reached a contrary conclusion. We simply do not have an adequate basis in the record to demonstrate reversible error in the chancellor's factual findings that Mr. Love conferred actual authority to settle this matter upon Mr. Hopkins and that it was Mr. Love's offer that Mr. Hopkins conveyed and that was accepted by the McDowells.

IV.

In addition to defending the chancellor's ruling in favor of their motion to enforce a settlement, the McDowells also contend that Mr. Love has brought a frivolous appeal. They seek attorney's fees for this appeal pursuant to Tennessee Code Annotated section 27-1-122, which provides:

When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

The frivolous appeal statute "must be interpreted and applied strictly so as not to discourage legitimate appeals." *Davis v. Gulf Ins. Grp.*, 546 S.W.2d 583, 586 (Tenn. 1977); *Wakefield v. Longmire*, 54 S.W.3d 300, 304 (Tenn. Ct. App. 2001); *see also*, *e.g.*, *GSB Contractors, Inc. v. Hess*, 179 S.W.3d 535, 547 (Tenn. Ct. App. 2005). "A frivolous appeal is one that is devoid of merit, or one that has no reasonable chance of succeeding." *Logan v. Est. of Cannon*, 602 S.W.3d 363, 387 (Tenn. Ct. App. 2019) (quoting *Young*, 130 S.W.3d at 67)). "Imposing a penalty for a frivolous appeal is a remedy which is to be used only in obvious cases of frivolity and should not be asserted lightly or granted unless clearly applicable—which is rare." *Conder v. Salyers*, 421 S.W.3d 589, 597 (Tenn. Ct. App. 2013) (quoting *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 342 (Tenn. 2010)). Nevertheless, "[s]uccessful litigants should not have to bear the expense and vexation of groundless appeals." *Davis*, 546 S.W.2d at 586; *see also*, *e.g.*, *Glanton v. Lord*, 183 S.W.3d 391, 401 (Tenn. Ct. App. 2005); *Jackson v. Aldridge*, 6 S.W.3d 501, 504 (Tenn. Ct. App. 1999). In considering pro se filings, as noted above, it is imperative that courts remain "mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary." *Hessmer*, 138 S.W.3d at 903. Ultimately, "[t]he award of damages for the filing of a frivolous appeal lies within the sound discretion of this Court." *GSB Contractors, Inc.*, 179 S.W.3d at 547; *see also*, *e.g.*, *Chiozza v. Chiozza*, 315 S.W.3d 482, 493 (Tenn. Ct. App. 2009).

In advancing this appeal, Mr. Love followed the procedure set forth in Tennessee Rule of Procedure 24 for providing a statement of the evidence to facilitate appellate review. While the record before us is insufficient to unsettle the chancellor's findings, Mr. Love, thereby, avoided one of the major bases of this court finding an appeal to be frivolous.[6] Mr. Love treads much closer to a second major basis for this court finding an

---

[6] While certainly not an automatic basis for finding an appeal to be frivolous, this court has on multiple occasions pointed to failure to file either a transcript or a Tennessee Rule of Appellate Procedure 24 statement of the evidence, when necessary to consider the appeal, in finding that an appeal had no reasonable chance of success and constituted a frivolous appeal. For example, in *Young v. Barrow*, this court, finding the pro se appellant's appeal to be frivolous, observed that "an appeal in which the reviewing court's ability to address the issues raised is undermined by the appellant's failure to provide an adequate record is deemed frivolous because it has no reasonable chance of succeeding." 130 S.W.3d at, 67. Similarly, in *Williams v. Williams,* an appellant provided a transcript of a pendente lite hearing before a divorce referee but did not provide a trial transcript while raising credibility-based challenges on appeal to the trial court's ruling. 286 S.W.3d 290, 297 (Tenn. Ct. App. 2008). This court found the appeal to be frivolous noting that "[a]n appeal in which the appellate court's ability to address the issues raised is undermined by the appellant's failure to provide an adequate record may be deemed frivolous." *Id*. *See also*, *e.g.*, *Clark v. Owens*, No. M2018-01418-COA-R3-CV, 2019 WL 2051308, at *3 (Tenn. Ct. App. May 8, 2019) ("Because Appellant failed to provide this Court with a record that would allow us to review the

appeal to be frivolous. This Court has repeatedly considered woeful deficiencies in briefing in finding an appeal to be frivolous.[7] Mr. Love's handling of the apparent authority

trial court's findings, we conclude that this appeal had no prospect of succeeding. Therefore, the appeal is frivolous . . . ."); *Palmer v. McDonald*, No. M2015-00321-COA-R3-CV, 2017 WL 2984248, at *3 (Tenn. Ct. App. July 13, 2017) (finding an appeal to be frivolous, in part, because of an "absence of a transcript or statement of the evidence"); *Baine v. Woods*, No. W2016-00583-COA-R3-JV, 2017 WL 2275802, at *3 (Tenn. Ct. App. May 24, 2017) ("We find this appeal to be frivolous. . . . An appeal has no reasonable chance of succeeding when our 'ability to address the issues raised is undermined by the appellant's failure to provide an adequate record.' Such is the case here." (quotations omitted.)); *Johnson v. New Wave, LLC*, No. M2014-02447-COA-R3-CV, 2015 WL 9594534, at *4 (Tenn. Ct. App. Dec. 30, 2015) (concluding, in part based on a failure to provide an adequate record, that the appeal was frivolous); *Cremeens v. Cremeens*, No. M2014-00152-COA-R3-CV, 2015 WL 1946165, at *5-6 (Tenn. Ct. App. Apr. 29, 2015) (determining that an appeal was frivolous where the arguments on appeal related to factual findings and the record provided was inadequate to allow consideration); *Albertson v. Albertson*, No. E2010-02647-COA-R3-CV, 2011 WL 4440064, at *1 (Tenn. Ct. App. Sept. 26, 2011) (noting that "[h]usband failed to provide this Court with a record which would allow us to review the Trial Court's findings, [and concluding] we find that this appeal had no prospect of succeeding"); *Gerakios v. Gerakios*, No. M2009-01309-COA-R3-CV, 2010 WL 2612684, at *2-3 (Tenn. Ct. App. June 30, 2010) (determining an appeal was frivolous where appellant failed to provide an adequate record to allow consideration of the issues); *Keisling v. Keisling*, No. M2007-01102-COA-R3-CV, 2008 WL 1923105, at *3 (Tenn. Ct. App. May 1, 2008) (finding an appeal to be frivolous because the record contained neither a transcript nor statement of the evidence); *In re M.L.D.*, 182 S.W.3d 890, 898 (Tenn. Ct. App. 2005) (considering the inadequacy of the record to support review, even in the context of a parental rights termination appeal, as part of finding the appeal to be frivolous); *Couillard v. Couillard*, No. E2001-01770-COA-R3-CV, 2002 WL 1446669, at *4 (Tenn. Ct. App. July 3, 2002) (determining an appeal was frivolous where the challenger "failed to take any steps to prepare an adequate record, either by transcript or a statement of the evidence"); *Trusty v. Robinson*, No. M2000-01590-COA-R3-CV, 2001 WL 96043, at *5 (Tenn. Ct. App. Feb. 6, 2001) ("We do not question the earnestness of [the appellants] or their lawyer in pressing this appeal. . . . However, because of the absence of an adequate record, we can reach no conclusion other than that there was never a reasonable chance that this appeal could succeed. . . . Accordingly, we find that this appeal is frivolous."); *Williams v. Williams*, No. 01A01-9710-CV-00566, 1999 WL 93587, at *3-4 (Tenn. Ct. App. Feb. 25, 1999) (determining an appeal to be frivolous where a party failed to provide an adequate record to allow consideration of the issues raised); *Mash v. Mash*, No. 88-165-II, 1989 WL 22704, at *4 (Tenn. Ct. App. Mar. 15, 1989) (finding an appeal frivolous where the challenger failed to provide a record of the evidence presented that would enable consideration of where the preponderance of the evidence fell); *Greer v. Greer*, No. 86-267-II, 1987 WL 6026, at *1 (Tenn. Ct. App. Feb. 4, 1987) (finding the appeal to be frivolous because "neither a verbatim nor a narrative transcript of the evidence has been filed").

[7] *See, e.g.*, *Cheatham v. Lampkin*, No. M2021-00790-COA-R3-CV, 2022 WL 2525581, at *5 (Tenn. Ct. App. July 7, 2022) (concluding the appeal was frivolous in light of the significant deficiencies of the appellant's briefing); *Luker v. Luker*, No. M2021-00758-COA-R3-CV, 2021 WL 6066802, at *6 (Tenn. Ct. App. Dec. 22, 2021) (same); *Rummage v. Rummage*, No. M2016-02356-COA-R3-CV, 2018 WL 2134018, at *5 (Tenn. Ct. App. May 9, 2018) ("[D]eficiencies in Father's appellate brief coupled with Father's reliance on documents and facts that are not contained in the appellate record lead us to conclude that Father's appeal had no reasonable chance of success and that this is an appropriate case in which to award damages."); *Al-Athari v. Gamboa*, No. M2016-01310-COA-R3-CV, 2017 WL 3208942, at *3 (Tenn. Ct. App. July 28, 2017) (concluding the appeal was frivolous, in part, based upon "the manifest deficiencies" in the briefing); *Mora v. Vincent*, No. E2016-00327-COA-R3-CV, 2017 WL 1372862, at *5 (Tenn. Ct. App. Apr. 13, 2017) ("Plaintiff's brief on appeal is so severely deficient that this Court is unable

argument advances, at least in part, a reasoned contention in support of his challenge, but the inadequacies of his briefing with regard to the issue of actual authority create a more serious question as to whether a finding that this is a frivolous appeal is, nevertheless, warranted in the present case. When a party challenges one ground upon which a trial court reached an adverse conclusion but leaves another separate ground, which is adequate alone to support the result, unscathed in its argumentation, that approach to appellate litigation is consistent with a determination that an appeal has no reasonable chance to succeed and is thus frivolous. Considered as a pro se filing, while his argument is unconvincing, Mr. Love did not leave the chancellor's actual authority conclusion unscathed. Though his actual authority briefing is sufficiently limited that it approaches the line of a frivolous appeal, we simply cannot conclude that this is one of those rare and obvious cases in which a finding that an appeal is frivolous is warranted.

V.

For the reasons discussed above, we affirm the Union County Chancery Court's granting of the McDowells' motion to enforce settlement. Costs of the appeal are taxed to Troy Love, the appellant, for which execution may issue if necessary. The case is remanded for such further proceedings as may be necessary and consistent with this opinion.

_____<br>JEFFREY USMAN, JUDGE

---

to determine even what issues Plaintiff is attempting to raise on appeal. As such, Plaintiff's appeal is devoid of merit with little prospect that the appeal could ever succeed [and is considered frivolous].”); *Oakes v. Oakes*, No. E2016-00274-COA-R3-CV, 2016 WL 7468198, at *3-4 (Tenn. Ct. App. Dec. 28, 2016) (concluding that an appeal was frivolous where a party's briefing was extremely deficient); *Murray*, 457 S.W.3d at 404 (finding an appeal to be frivolous and noting that the pro se "Plaintiffs' brief on appeal is so severely deficient that this Court is unable to determine even what issues Plaintiffs are attempting to raise on appeal. As such, Plaintiffs' appeal is devoid of merit with little prospect that the appeal could ever succeed."); *Moore v. Youngquist*, No. 01-A-01-9012CH00433, 1991 WL 57982, at *2 (Tenn. Ct. App. Apr. 19, 1991) ("The issues raised on this appeal are, at best, insubstantial. . . . The nature of the issues and the inadequacy of the appellant's brief leads only to one conclusion—that this appeal is frivolous . . . .").